IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **DAVID WICKLIFFE AND ROBERT MORRISON, Individually and On Behalf of All Others Similarly Situated,** § § § § | | |
| **Plaintiffs,** § § | | |
| v. § § | Civil Action No. 7:21-cv-28 | |
| **TERRA OILFIELD SERVICES, LLC,** § § § | | |
| **Defendant.** § § | | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs David Wickliffe and Robert Morrison ("Named Plaintiffs") on behalf of themselves and all others similarly situated ("Class Members" herein) (Named Plaintiff and Class Members are collectively referred to herein as "Plaintiffs") bring this Fair Labor Standards Act ("FLSA") suit against the above-named Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended and the New Mexico Minimum Wage Act ("NM Wage Act"), N.M. STAT. § 50-4-19, *et seq*. and in support thereof would show as follows:

### I. NATURE OF SUIT

1. The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not

less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Likewise, the NM Wage Act requires that employees who work more than forty hours in a week be paid one and one-half times their regular hourly rate for hours worked in excess of forty hours. N.M. STAT. § 50-4-22.

3. Defendant Terra Oilfield Services, LLC ("Defendant") failed to pay its operators, A Supervisors and B Supervisors in both its Water Treatment and Water Transfer divisions in accordance with the guarantees and protections of the FLSA and the NM Wage Act. Defendant refuses to pay Plaintiffs for all of their work time. Specifically, Defendant refuses to pay Plaintiffs for (1) drive time before arriving and after leaving their oilfield jobsites, (2) time at service stations performing integral and indispensable work, (3) all time on the jobsites, and (4) travel that keeps Plaintiffs away from home overnight. Defendant also failed to include non-discretionary "Travel Bonuses" in Plaintiffs' regular rate of pay for the purposes of calculating the appropriate overtime rate. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiffs with regard to the work performed and the Defendant's compensation policies, Named Plaintiffs bring their FLSA claims as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and their NM Wage Act claims as an opt-out class action under Federal Rule of Civil Procedure 23.

## II. PARTIES

4. Named Plaintiff David Wickliffe is an individual who resides in Oklahoma and was employed by Defendant within the meaning of the FLSA. Named Plaintiff Wickliffe was employed primarily by Defendant in Defendant's Water Treatment division, from May 2019 through October 2020. He has consented to be a party-plaintiff in this action. *See* Exhibit A to Plaintiffs' Original Complaint.

5. Named Plaintiff Robert Morrison is an individual who resides in Arkansas and was employed by Defendant within the meaning of the FLSA. Named Plaintiff Morrison was employed by Defendant in Defendant's Water Transfer division, from April 2018 through January 17, 2021. He has consented to be a party-plaintiff in this action. *See* Exhibit B to Plaintiffs' Original Complaint.

6. The Named Plaintiffs and Class Members are Defendant's current and former operators, A Supervisors and B Supervisors who worked as such for Defendant in Defendant's Water Treatment and Water Transfer divisions.

7. Defendant Terra Oilfield Services, LLC is a foreign limited liability company organized in Delaware that is authorized to do business in Texas and that is doing business in Texas. Defendant may be served with service of process by serving its registered agent, Cogency Global, Inc., at 1601 Elm Street, Dallas Texas 75201.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law. Specifically, Plaintiffs assert claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' NM Wage Act claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Plaintiffs' NM Wage Act claims pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action. Additionally, this court has diversity jurisdiction under 28 U.S.C. § 1332, as Named Plaintiffs are residents of Oklahoma and Arkansas, and Defendant is a resident of Delaware, and the amount at stake in this matter is more than $75,000.

9. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Midland County

and Ector County, Texas, both of which are in this District and Division. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b). Named Plaintiffs Wickliffe and Morrison were employees of Defendant and performed work for Defendant in Ector County and Midland County, Texas. Defendant does business and maintains an office in Midland County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b)(1).

### IV. COVERAGE UNDER THE FLSA

10. At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiffs and the Class Members.

11. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. At all times hereinafter mentioned, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. At all times hereinafter mentioned Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

14. At all times hereinafter mentioned, Named Plaintiffs and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom

Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. COVERAGE UNDER THE NM WAGE ACT

15. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 50-4-21(B) of the NM Wage Act.

16. At all times hereinafter mentioned, Named Plaintiffs and the NM Class Members (defined below) were individual "employees" within the meaning of Section 50-4-21(C) of the NM Wage Act, and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 50-4-21(A) of the NM Wage Act.

## VI. FACTUAL ALLEGATIONS

### A. Violations

17. Defendant is an oilfield services company that provides both water transfer and water treatment services to oilfield frac sites in Texas and New Mexico. Defendant employs operators, A Supervisors and B Supervisors in both its Water Treatment and Water Transfer divisions.

18. Defendant has an office in Midland, Texas and performs work in and around Midland County.

19. Named Plaintiff Wickliffe was hired by Defendant as an operator in the Water Treatment division in May 2019. At some point thereafter, he moved into a B Supervisor role in the same department and remained in that role until January 2020, when he became an A Supervisor. He left Defendant's employment in October 2020. While he was primarily employed in Defendant's Water Treatment division, he also performed work as an operator in Defendant's Water Transfer division.

20. Named Plaintiff Morrison was hired by Defendant as an operator in the Water Transfer division in April 2018. During his employment he performed duties first as an operator, then as a B

Supervisor, and finally as an A Supervisor. He left his employment with Defendant on January 17, 2021.

21. Throughout their employment, Defendant paid Named Plaintiffs by the hour and not on a salary-basis or on a fee-basis.

22. In both the Water Treatment and Water Transfer divisions, Defendant paid all of its operators, B Supervisors and a number of its A Supervisors by the hour and not on a salary-basis, or on a fee-basis.

23. In both the Water Treatment and Water Transfer divisions, neither operators, A Supervisors or B Supervisors have the authority to hire or fire other employees.

24. Defendant employs Water Treatment and Water Transfer operators, A Supervisors and B Supervisors across the country, including in Texas (both in the Eagle Ford Shale in South Texas and the Permian Basin in West Texas), New Mexico, Ohio, North Dakota, and Oklahoma.

25. Defendant classifies its Water Treatment and Water Transfer operators, A Supervisors and B Supervisors as FLSA and NM Wage Act non-exempt employees, meaning they are entitled to overtime for hours worked over forty hours per week.

26. Named Plaintiffs performed work in the Permian Basin, based out of either Carlsbad, New Mexico or Midland, Texas. Defendant maintained man camps in both locations.

27. Defendant divided the workday into two twelve hour-shifts. Regardless of whether Named Plaintiffs were working out of Carlsbad or Midland, their daily routine, and the routine of the Water Treatment and Water Transfer operators, A Supervisors and B Supervisors, was the same. The day started with a crew of operators and A and/or B Supervisors meeting up at the man camp or at a hotel approximately 15 minutes prior to the time needed to leave to make it to the designated worksite. The operators would load into company-vehicles driven by either operator(s) or A or B Supervisors and drive to a service station in the city, either Midland or Carlsbad, within fifteen

minutes of leaving the man-camp or hotel. There were either one or two A and B Supervisors per shift.

28. At the service station, the operators and A and/or B Supervisors would perform various tasks that were integral and indispensable to Plaintiffs' principal activities for which Defendant employed and employs them, including:

    - Filling the company vehicle with fuel;
    - Filling 5 and 15 gallon gas canisters with unleaded fuel for use on the jobsite;
    - Filling supplemental fuel tanks with diesel fuel for use on the jobsite;
    - Conducting vehicle inspections, including checking the coolant and oil level of the company vehicle; and
    - Performing any necessary maintenance on the company vehicle.

29. The fuel canisters and supplemental fuel tanks filled at the service station were used to fill the vehicles that remained on the jobsite throughout the job. Those vehicles were left running during the shift and were occupied by the crew, including as a means of air conditioning. The vehicles driven to and from the jobsite were also used at the jobsites, were also left running throughout the day, and were occupied by the crew throughout the shift. The diesel fuel from the supplemental fuel tank was necessary to run the water pumps on the job sites. The vehicles were also used on the jobsite to ferry diesel fuel between onsite fuel cells and the diesel engine-driven water pumps used in the fracking process.

30. From the service station, the crew, driven in a company vehicle by an A or B Supervisor or operator, would continue to the job site, where they would attend either a shift change meeting or a safety meeting. These meetings lasted between 15 and 30 minutes.

31. Thereafter, the prior shift's driver drove around the site to pick up the operators and A and B Supervisors at their various locations and then returned to the man camp or hotel. The crew

typically left the jobsite to return to either Carlsbad or Midland after spending approximately 13-14.5 hours at the worksite. Occasionally, the crew stopped on the way home to fill up the supplemental fuel tank with diesel fuel in order to prepare for the next day's work. The crew typically arrived back in the man camp or hotel between 60 to 90 minutes after they left the site.

32. Each crew member was typically on the jobsite for a total of 13-14.5 hours. And, including drive time and time spent at the service station, the workday would typically last more than 15 hours per day.

33. The Water Treatment and Water Transfer operators, as well as the A and B Supervisors, including Named Plaintiffs and the Class Members, did not receive uninterrupted meal breaks. Rather, they ate while working.

34. Defendant had a policy and practice of failing and refusing to pay Named Plaintiffs and Class Members for any more than 12.5 hours per day worked or—on rare occasions—13 hours per day worked. That is, Defendant had a policy and practice of failing and refusing to pay Plaintiffs for all of their work time.

35. On numerous occasions, Named Plaintiffs reported working more than 12.5 hours to Defendant. Instead of paying for that time over 12.5 hours in a day, Defendant compensated Named Plaintiffs for a lesser amount. Oftentimes when Named Plaintiffs' timesheets reflected that they worked more than 12.5 hours in a day, Defendant would return Named Plaintiffs' timesheet back to them and instruct them to reduce their reported hours to 12.5.

36. There were numerous occasions when Named Plaintiffs reported working more than 12.5 hours only to be paid for 12.5 hours. Because it was futile to report the additional hours that they worked over 12.5 hours, Named Plaintiffs often reported that they worked only 12.5 hours of work per day even though they worked more than that.

37. And when Named Plaintiffs did occasionally report more than 12.5 hours worked in a shift, their time was often cut back to 12.5 hours.

38. Named Plaintiffs and Class Members worked long hours. Named Plaintiffs typically worked at least fourteen hours per day, seven days per week, and, consequently, in weeks where they performed work, more than forty hours in a week.

39. Therefore, Defendant failed to compensate Named Plaintiffs and the Class Members at the appropriate overtime rate for their work time spent at the service station, driving time, and job site time.

40. Although the Water Transfer and Water Treatment operators, A Supervisors and B Supervisors including Named Plaintiffs and the Class Members, performed work in the oilfields, their homes were very often hundreds of miles away. They worked on hitches where they had a set number of days on duty followed by a set number of days where they were off duty and returned to their homes. Thus, they were required to travel between their homes and remote jobsites ("Remote Worksite Travel") during normal work hours and were required to stay overnight near these remote jobsites for the entirety of their hitch.

41. Defendant paid the Water Transfer and Water Treatment operators, A Supervisors and B Supervisors, including Named Plaintiffs and the Class Members, a "Travel Bonus" for their Remote Worksite Travel. To obtain the Travel Bonus, Named Plaintiffs and the Class Members were required to complete a "Travel Bonus Approval Form" where they were required to list the date of travel, start location, and end location. Defendant then calculated the Travel Bonus by multiplying the number miles driven by $0.20. The Travel Bonuses were paid as wages and were subject to withholdings for Federal Income Tax, Social Security, and Medicare.

42. The Travel Bonus was non-discretionary as to both the fact that payment is to be made and the amount of payment.

43. Defendant does not include the Travel Bonus in Water Transfer or Water Treatment operators', A Supervisors' or B Supervisors' (including Named Plaintiffs' and the Class Members') regular rates of pay for purposes of determining the appropriate overtime rate.

44. Defendant did not and does not consider Remote Worksite Travel as hours worked and therefore does not pay any hourly wages for Remote Worksite Travel. Because Remote Worksite Travel occurs in weeks where Plaintiffs work more than forty hours, the Remote Worksite Travel constitutes uncompensated overtime.

45. In the performance of their work, Plaintiffs handle tools, vehicles, hoses, safety and other equipment and materials that were manufactured outside of the state in which they were performing work.

46. For all times relevant to this action, as Water Transfer and Water Treatment operators, A Supervisors and B Supervisors, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work outside in the oilfield. The Plaintiffs' primary job duty is not the performance of office or non-manual work directly related to Defendant's management or general business operations or those of its customers.

47. The job duties of the Water Transfer operators, A Supervisors and B Supervisors at each of the Defendant's locations was and is essentially the same. As a result, each Water Transfer operator, A Supervisor and B Supervisor performed the same or similar job duties throughout Defendant's operations.

48. The job duties of the Water Treatment operators, A Supervisors and B Supervisors at each of the Defendant's locations was and is essentially the same. As a result, each Water Treatment operator, A Supervisor and B Supervisor performed the same or similar job duties throughout Defendant's operations.

49. The daily and weekly activities of Plaintiffs were routine and largely governed by standardized plans and procedures created by Defendant. Virtually every job function was predetermined by Defendant, including the schedule of work and related work duties. The Plaintiffs were prohibited from varying their job duties outside of the predetermined parameters.

50. Plaintiffs did not direct the work of two or more employees at any time during their employment as operators or A or B Supervisors. Plaintiffs did not have the authority to hire or fire other employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

51. Plaintiffs did not perform work that required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; and they do not perform work in a recognized field of artistic or creative endeavor.

52. Defendant did not pay Named Plaintiffs or Class Members on a salary or a fee basis pursuant to 29 C.F.R. §541.600. Instead, Defendant paid Named Plaintiffs and Class Members on an hourly basis.

53. Defendant's Water Transfer and Water Treatment operators are FLSA non-exempt employees.

54. Defendant's Water Transfer and Water Treatment operators are NM Wage Act non-exempt employees.

55. Defendant's Water Transfer and Water Treatment A Supervisors are FLSA non-exempt employees.

56. Defendant's Water Transfer and Water Treatment A Supervisors are NM Wage Act non-exempt employees.

57. Defendant's Water Transfer and Water Treatment B Supervisors are FLSA non-exempt employees.

58. Defendant's Water Transfer and Water Treatment B Supervisors are NM Wage Act non-exempt employees.

59. Defendant was aware that Plaintiffs were performing work outside of their recorded hours. But Defendant did not and does not compensate Named Plaintiffs or Class Members for any time other than time they spent at the jobsite. Further, Defendant does not compensate Named Plaintiffs or Class Members for all of their time at the jobsites; and it does not compensate them for any of their time driving after the first work of the day and before the last work of the day.

60. As a result, Defendant failed and refused to pay Named Plaintiffs and Class Members for all overtime hours they worked.

61. Defendant has employed and is employing other individuals as Water Transfer and Water Treatment operators, A Supervisors and B Supervisors who have performed the same job duties under the same pay provisions as Named Plaintiffs, in that they have performed, or are performing, the same job duties, and have consistently worked in excess of forty hours in a workweek and have been denied pay for work at service stations, drive time, and jobsite work.

62. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Named Plaintiffs and the Class Members.

**B. Defendants' denial of pay for overtime constitutes continuing course of conduct.**

63. In 2009, the New Mexico 49th Legislature unanimously passed—and the governor signed—House Bill 489. House Bill 489 became effective June 19, 2009. With House Bill 489's passage, the statute of limitations for wage claims, including unpaid overtime claims, under the NM Wage Act was extended from one year to three years. NMSA 1978 § 37-1-5. Also, effective June 19, 2009, the statute of limitations under the NM Wage Act is eliminated when the violation is part of a "continuing course of conduct." *Id.* § 50-4-32.

64. Since before Named Plaintiffs began working for Defendant and continuing through today, Defendant has maintained a policy and practice of failing and refusing to pay Named Plaintiffs and Class Members for any more than 12.5 hours per day worked or—on rare occasions—13 hours per day worked. And even though Water Transfer and Water Treatment operators, A Supervisors and B Supervisors work more than that prescribed amount—and those hours constitute overtime hours—Defendant did not pay Named Plaintiffs or the Class Members at an overtime rate for those hours over 12.5 in a day.

65. Since before Named Plaintiffs began working for Defendant and continuing through today, Defendant has maintained a policy and practice of failing and refusing to (1) pay any hourly wage for Remote Worksite Travel and (2) include the Travel Bonus in Plaintiffs' and the Class Members' regular rates of pay.

66. Defendant's continued refusal to pay for all of the Plaintiffs' compensable work time constitutes a continuing course of conduct.

## VII. COLLECTIVE ACTION ALLEGATIONS

67. Named Plaintiffs and the Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, Water Transfer and Water Treatment operators, A Supervisors and B Supervisors in Defendant's worksites in Texas and New Mexico. Further, Named Plaintiffs and the Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek. More specifically, Defendant knowingly refused to pay Named Plaintiffs and the Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours per day, which did not include all drive time, time at a service station, all of the jobsite time, or Remote Worksite Travel. Defendant also failed to include the non-discretionary "Travel Bonus" in Plaintiffs' regular rate of pay for the purposes of

calculating the appropriate overtime rate. Thus, the Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

68. This policy or practice is and was applicable to the Named Plaintiffs and all Class Members. Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiffs or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiffs also applied to all Class Members. Accordingly, the "Class Members" are properly defined as:

> **1. All current and former Water Treatment operators, A Supervisors or B Supervisors in Defendant's Water Treatment division in the last three years who were paid by the hour, and**
>
> **2. All current and former Water Transfer A Supervisors in the last three years and all current and former Water Transfer operators and B Supervisors from December 23, 2019 to the present.**

## VIII. NM WAGE ACT RULE 23 CLASS ALLEGATIONS

69. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Named Plaintiffs, individually and on behalf of all other similarly situated employees, pursue NM Wage Act claims against Defendant.

70. Named Plaintiffs seek certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "NM Class Members") as follows:

> **All current and former Water Treatment and Water Transfer operators, A Supervisors or B Supervisors who were paid by the hour and who worked for Defendant in New Mexico in at least one workweek since June 19, 2009.**

71. Named Plaintiffs, individually and on behalf of all other similarly situated employees, seek relief on a class basis challenging Defendant's practice of (1) refusing to pay Named Plaintiffs and the Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours per day and therefore failing to pay Named Plaintiffs and other similarly situated employees one and one-half times their regular hourly rate of pay for all hours worked over forty in a workweek, (2) refusing to compensate Named Plaintiffs and NM Class Members for their Remote Worksite Travel, and

(3) refusing to include the non-discretionary "Travel Bonus" it paid to Plaintiffs in Plaintiffs' regular hourly rate.

72. Named Plaintiffs and the NM Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, non-exempt employees, namely Water Treatment and Water Transfer operators, A Supervisors and B Supervisors, on Defendant's worksites in New Mexico. Further, Named Plaintiffs and the NM Class Members were subjected to the same pay provisions in that they were all paid by the hour and were not paid for more than 12.5 hours per day, or on rare occasions, 13 hours per day, despite working more than 12.5 to 13 hours per day.

73. Defendant's failure to compensate employees for hours worked in excess of 40 in a workweek as required by the NM Wage Act results from a policy or practice of (1) refusing to pay Named Plaintiffs and the NM Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours per day, (2) refusing to compensate Named Plaintiffs and NM Class Members for their Remote Worksite Travel, and (3) refusing to include the non-discretionary "Travel Bonus" it paid to Plaintiffs in Plaintiffs' regular hourly rate. This policy or practice is applicable to the Named Plaintiffs and all NM Class Members. Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiffs or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiffs also applied to all NM Class Members.

74. Throughout the relevant period, Defendant knew that Named Plaintiffs and NM Class Members were not being properly compensated for all of their hours worked.

75. Defendant maintained common work, time, and pay policies and procedures for its Water Treatment and Water Transfer operators, A Supervisors and B Supervisors based out of and working in New Mexico. As a result, Named Plaintiffs and NM Class Members are similarly

situated and have been regularly deprived of pay for workweeks during which they worked more than forty hours.

76. Plaintiffs' NM Wage Act claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for the certification of a class action under Federal Rule of Civil Procedure 23.

77. **Numerosity.** The class satisfies the numerosity standard as it is believed that there are approximately 80-100 NM Class Members, including current and former employees. Consequently, joinder of all NM Class Members in a single action is impracticable. The data required to calculate the size of the class is within the control of Defendant.

78. **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

   a) Whether Defendant's common policy of paying for only 12.5 hours of work per day or, on rare occasions, 13 hours of work per day deprived its Water Treatment and Water Transfer operators, A Supervisors and B Supervisors proper overtime compensation.

   b) Whether Defendant violated the NM Wage Act by failing to pay for time worked at the service station;

   c) Whether Defendant violated the NM Wage Act by failing to pay for drive time after the first work, and before the last work, of the day;

   d) Whether Defendant violated the NM Wage Act by failing to pay for all jobsite time;

   e) Whether Defendant violated the NM Wage Act by failing to pay for Remote Worksite Travel;

   f) Whether Defendant violated the NM Wage Act by failing to include the "Travel Bonus" in Plaintiffs' regular hourly rate;

    g) Whether Defendant's violation of the NM Wage Act constituted a continuing course of conduct; and

    h) The proper measure of damages sustained by the NM Class Members.

79. **Typicality**. Named Plaintiffs' claims are typical of those of the class because Named Plaintiffs' claims arise from the same course of conduct and legal theories as the claims of the prospective NM Class Members. Like the NM Class Members, Named Plaintiffs worked as a non-exempt employees on Defendant's New Mexico jobsites. Like the NM Class Members, Named Plaintiffs regularly worked in excess of forty hours per week. Like the NM Class Members, Named Plaintiffs were not paid for all of their work time due to Defendant's policy of paying for only 12.5 hours of work per day or, on rare occasions, 13 hours of work per day. The other facts outlined above likewise apply equally to both Named Plaintiffs and the NM Class Members.

80. **Adequacy**. Named Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the NM Class Members they seek to represent. The interests of the members of the class will be fairly and adequately protected by Named Plaintiffs and the undersigned counsel, who have experience in employment and class action lawsuits.

81. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation of many of these claims would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all NM Class Members in conformity with the interest of efficiency and judicial economy.

### IX. CAUSE OF ACTION ONE:  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

82. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing employees, including Named Plaintiffs and the FLSA Class Members, in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates that are not less than one-and-one-half times their regular rates for which they were employed.  Defendant has acted willfully in failing to pay Named Plaintiffs and the Class Members in accordance with applicable law.

### X. CAUSE OF ACTION TWO:  FAILURE TO PAY WAGES IN ACCORDANCE WITH NEW MEXICO MINIMUM WAGE ACT

83.  During the relevant period, Defendant violated the New Mexico Minimum Wage Act, N.M. STAT. § 50-4-22 (West 2018), by employing employees, including Named Plaintiffs and the NM Class Members, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates that are not less than one-and-one-half times their regular hourly rate.  Defendant's violation of New Mexico Minimum Wage Act occurred as part of a continuing course of conduct.

### XI. PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Named Plaintiffs prays for judgment against Defendant as follows:

a. For an expedited Order certifying a class and directing notice to putative class members pursuant to 29 U.S.C. § 216(b);

b. For an Order certifying the NM Wage Law claims as a class action pursuant to Fed. R. Civ. P. 23, for designation of Named Plaintiffs as Class Representatives, and for designation of Plaintiffs' counsel as class counsel;

c. For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Named Plaintiffs (and those who have joined, or may join the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiffs (and those who have joined, or may join the suit);

d. For an Order awarding Named Plaintiffs and the NM Class Members damages pursuant to N.M. Stat. 50-4-26;

e. For an Order awarding Named Plaintiffs and the NM Class Members damages for all violations, regardless of the date on which they occurred, as a result of Defendant's continued course of conduct pursuant to N.M. Stat. Ann. 50-4-32;

f. For an Order awarding Named Plaintiffs (and those who have joined or may join the suit) the taxable costs and allowable expenses of this action;

g. For an Order awarding Named Plaintiffs (and those who have joined or may join the suit) attorneys' fees; and

h. For an Order awarding Named Plaintiffs (and those who have joined or may join the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

i. For an Order awarding Named Plaintiffs declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*; and

j. For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**
700 West Summit Dr.
Wimberley, Texas 78676
Tel: (512) 782-0567
Fax: (512) 782-0605

By: */s/ Douglas B Welmaker*
　　　Douglas B. Welmaker
　　　Texas State Bar No. 00788641
　　　doug@morelandlaw.com

**ATTORNEY FOR PLAINTIFFS**